# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
BRAHMAJOTHI VASUDEVAN MULUGU,    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )        1:23CV957
                                 )
DUKE UNIVERSITY SCHOOL           )
OF MEDICINE, et al.,             )
                                 )
          Defendants.            )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's (A) Motion for Leave to File Amended Complaint (Docket Entry 9 (the "First Amendment Motion")) and (B) Amended Motion for Leave to File Amended Complaint (Docket Entry 10 (the "Second Amendment Motion," and, collectively with the First Amendment Motion, the "Amendment Motions")). (See Docket Entry dated Feb. 27, 2024.) The Court will grant in part and will deny in part the Amendment Motions, by substituting "Duke University" for "Duke University School of Medicine" as a defendant and deeming Plaintiff's operative pleading amended to assert race discrimination claims under 42 U.S.C. § 1981 against Defendant Duke University and three of its employees, as well as a state-law claim for breach of the implied covenant of good faith and fair dealing against Defendant Duke University, but otherwise denying leave to amend.[1]

---

[1] For reasons stated in Deberry v. Davis, No. 1:08cv582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010), the undersigned
(continued...)

INTRODUCTION

Plaintiff commenced this case pro se by filing the Complaint (Docket Entry 1), which, in short order, she amended as of right (see Docket Entry 5 (the "Amended Complaint")). As the first defendant, the Amended Complaint names Duke University School of Medicine (see Docket Entry 5 at 2-3),[2] but – with the parties' agreement – the Court corrects that defendant's name to Duke University (see Docket Entry 8 at 1; Docket Entry 10 at 2; see also Docket Entry 5 at 6 ("[Plaintiff] was employed by Duke University and worked in the Department of Pharmacology and Cancer Biology (hereafter known as 'PCB'), which is a department within the Duke University School of Medicine.")). The Amended Complaint also identifies as defendants five of Defendant Duke University's employees, Donald Patrick McDonnell, Mary Frances Earley Klotman, Geeta Krishna Swamy, Colin Stephen Duckett, and Sharon Adele

---

1(...continued)
Magistrate Judge will enter an order, rather than a recommendation, as to the Amendment Motions. See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n.2 (4th Cir. 2011) (explaining that, where the plaintiff "moved for leave to amend her complaint[ ] . . . to add a state-law claim of medical malpractice," "the magistrate judge denied [that] motion," and the plaintiff "timely objected, thereby preserving the issue for review by the district court," the district court "could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law'" (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a))).

2 Pin cites to documents filed by Plaintiff refer to page numbers that appear in the footer appended to those documents upon their filing in the CM/ECF system (not to any original pagination). All quotations from Plaintiff's filings omit bold font.

2

Dowell-Newton (collectively, the "Individual Defendants," and, together with Defendant Duke University, the "Defendants"). (See Docket Entry 5 at 2-3.)[3] The Amended Complaint asserts claims against Defendants under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (see Docket Entry 5 at 4), for "discriminatory conduct" (id. at 5), in the form of "[t]ermination of [her] employment[, f]ailure to promote [her], . . . [u]nequal terms and conditions of [her] employment[, r]etaliation[, and] . . . [f]raud" (id.). Per the Amended Complaint, "Defendants discriminated against [Plaintiff] based on [her] . . . race[,] Asian[,] color[,] Brown[,] gender/sex[,] Female[,] religion[,] Hindu[,] national origin[,] Indian[, and] age[, born] 1967." (Id. (parentheses omitted).)

---

3 The Amended Complaint additionally lists the late Mohamed Bahie Abou-Donia as a defendant (see Docket Entry 5 at 3; see also Docket Entry 15 at 2 ("return[ing] the summons [for Dr. Abou-Donia] unexecuted" and giving reason as "Deceased 'DOD 3-26-23'")); however, "a dead man obviously cannot be named party defendant in an action," Chorney v. Callahan, 135 F. Supp. 35, 36 (D. Mass. 1955); see also Laney v. South Carolina Dep't of Corr., C/A No. 4:11-3487, 2012 WL 4069680, at *4 (D.S.C. May 8, 2012) (unpublished) ("Obviously, a deceased person cannot be served and respond to a lawsuit."), recommendation adopted, 2012 WL 4069590 (D.S.C. Sept. 15, 2012) (unpublished). This Order thus will direct Plaintiff to show cause why the Court should not dismiss the late Dr. Abou-Donia from this action under the Federal Rules of Civil Procedure (the "Rules"). See Goss v. Larry, No. 2:20CV2978, 2021 WL 2562407, at *2 (D.S.C. June 22, 2021) (unpublished) (agreeing that purported defendant "named as a party [who] in fact died before the commencement of the action . . . [should] be dismissed without prejudice . . . pursuant to Rule 4(m)").

Before Defendants responded to the Amended Complaint, Plaintiff filed the First Amendment Motion, seeking "leave to file [a second] amended complaint" (Docket Entry 9 at 2); in particular, Plaintiff sought to add as defendants (A) Ericka Loretta Lewis, who "handled [Plaintiff's] complaints of harassment and assault at [Defendant] Duke University" (id.; see also id. ("propos[ing Ms. Lewis] as an additional defendant due to her culpability in failing to address the harassment and retaliation [Plaintiff] was experiencing at [Defendant] Duke University with the issuance of a remedial action letter that [Plaintiff] was entitled to, per [Defendant] Duke University['s] policy")), and (B) Ashley Edwards-Davis, who "handled [Plaintiff's] complaints of retaliation at [Defendant] Duke University" (id. at 2-3; see also id. at 3 ("propos[ing Ms. Edwards-Davis] as a defendant, because, in addition to causing undue delay in the investigatory process for retaliation by not utilizing the evidence [Plaintiff] had already collected for Ms. Lewis and instead, having [Plaintiff] recount everything [she] had previously discussed with Ms. Lewis while [Plaintiff] was undergoing an investigation [her]self, Ms. Edwards-Davis engaged in discriminatory conduct against [Plaintiff] by referring to [her] as Geeta during multiple meetings")). Plaintiff also requested leave "to add an additional claim of breach of [the] implied covenant of good faith and fair dealing, [based on] the same set of facts as the claims raised before." (Id. at 3.)

4

Eight days later (but still prior to any response by Defendants to either the Amended Complaint or the First Amendment Motion), Plaintiff filed the Second Amendment Motion, requesting:

> leave of court to file [a second] amended complaint in order to restate all amendments requested in the [First Amendment M]otion, change the identification of [D]efendant Duke University School of Medicine to Duke University, add 42 U.S. Code § 1981 as another basis for jurisdiction, upon which [she] can pursue individual liabilities for [Individual D]efendants[,] and challenge the enforceability and the conscionability [sic] of being subject to binding arbitration under [Defendant] Duke [University's d]ispute [r]esolution process.

(Docket Entry 10 at 2 (internal quotation marks omitted).) Defendants have opposed the Amendment Motions (see Docket Entry 19) and Plaintiff has replied (see Docket Entry 28).

## DISCUSSION

"Defendants oppose[d] [the Amendment Motions] on two grounds." (Docket Entry 19 at 2.) "First, [Defendants argued that] all of Plaintiff's claims in this action, including the proposed new claims, are subject to binding arbitration under [Defendant] Duke [University's] Dispute Resolution Process . . . ." (Id.; see also id. (noting that Defendants had moved to compel arbitration or dismiss for want of subject matter jurisdiction/proper venue).) The Court (per Chief United States District Judge Catherine C. Eagles), however, recently "ordered that [Defendants'] motions to compel arbitration or dismiss [we]re denied." (Docket Entry 44 at 1 (internal citation and all-caps and bold font omitted) (adopting Docket Entry 41)), thereby (A) foreclosing Defendants' first

5

argument in opposition to the Amendment Motions and (B) mooting Plaintiff's proposed amendment of the Amended Complaint to "challenge the enforceability and the conscionability [sic] of being subject to binding arbitration" (Docket Entry 10 at 2).

"Second, [Defendants contended that the Amendment M]otions should be denied because [Plaintiff's proposed] amendments would be <u>futile</u>." (Docket Entry 19 at 2 (emphasis added).) Because (as documented in the Introduction) Plaintiff already has amended her pleading once as of right and Defendants have not consented to the proposed amendments, those amendments require "the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a), "leave to amend a pleading should be denied . . . [when] the amendment would have been <u>futile</u>." <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (emphasis added) (internal quotation marks omitted); <u>see also</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (identifying "futility of amendment" as basis for denying leave to amend). "Futility is apparent if the proposed amend[ment ] fails to state a claim under the [ R]ules and accompanying standards." <u>Katyle v. Penn Nat'l Gaming, Inc.</u>, 637 F.3d 462, 471 (4th Cir. 2011). In other words, if Plaintiff's "proposed amend[ments do] not properly state a claim under Rule 12(b)(6) . . .[, they] would be <u>futile</u>." <u>United States ex rel. Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir. 2008) (emphasis added).

6

Under Rule 12(b)(6), "a plaintiff must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). That standard requires the Court to "test the sufficiency of [Plaintiff's proposed claims], not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. (internal quotation marks omitted). "Thus, . . . [the C]ourt must consider the factual allegations [proffered in support of amendment] as true and draw all reasonable inferences in favor of [ P]laintiff." Id. "But importantly, [pleading a plausible claim] 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[ ] will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Finally, to state a claim under Rule 12(b)(6), "[a] complaint must contain 'factual allegations sufficient to raise a right to relief above the speculative level.'" Id. (internal brackets omitted) (quoting Twombly, 550 U.S. at 555); see also Iqbal, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line

7

between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).[4]

As concerns the proposed addition of Ms. Lewis and Ms. Edwards Davis, Defendants correctly noted, "[t]o start, [that P]laintiff may not bring claims pursuant to Title VII or the ADEA against individual defendants." (Docket Entry 19 at 5 (citing, inter alia, Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999), and Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994)); see also Docket Entry 10 at 2 (conceding that Title VII and ADEA "do not permit naming individual parties").)[5] "Turning to Plaintiff's proposed Section 1981 claim, [Defendants have argued that] the trivial allegations she [has] ma[de] against [Ms.] Lewis and [Ms.] Edwards-Davis are insufficient to state a plausible claim for relief." (Docket Entry 19 at 8.) In conjunction with that argument, Defendants emphasized that "Plaintiff provide[d] no factual allegations to support an inference that [Ms. Lewis and Ms. Edwards-Davis] treated [Plaintiff] differently based on her race . . . ." (Id. at 9 (emphasis added).)

"Section 1981 guarantees to all persons in the United States 'the same right to make and enforce contracts as is enjoyed by

---

[4] Those pleading standards apply notwithstanding Plaintiff's pro se status. See Bing, 959 F.3d at 618.

[5] Given that concession, the Court will require Plaintiff to show cause why the Court should not dismiss any claim by Plaintiff against Individual Defendants under Title VII and/or the ADEA.

8

Case 1:23-cv-00957-CCE-LPA   Document 46   Filed 09/23/24   Page 8 of 20

white citizens." Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1017 (4th Cir. 1999) (internal ellipses omitted) (quoting 42 U.S.C. § 1981(a)). "Although [Section] 1981 does not itself use the word 'race,' the [United States Supreme] Court has construed [S]ection [1981] to forbid all 'racial' discrimination in the making of private as well as public contracts." Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987) (emphasis added).

More specifically, Section 1981 "protect[s] from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended [Section] 1981 to forbid . . . ." Id. at 613 (emphasis added); see also James v. Benjamin, No. 3:17CV491, 2019 WL 8757191, at *5 (D.S.C. Dec. 10, 2019) (unpublished) ("Section 1981 guarantees equal rights to all persons in the United States 'to make and enforce contracts . . .' regardless of race or color." (emphasis added) (quoting 42 U.S.C. § 1981(a))), recommendation adopted, 2020 WL 1129830 (D.S.C. Mar. 6, 2020) (unpublished), appeal dismissed, 827 F. App'x 317 (4th Cir. 2020). Coordinately, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); see also Spriggs, 165 F.3d at 1018-19 ("[A]n at-will

9

employment relationship is contractual, [and] . . . such relationships may therefore serve as predicate contracts for [Section] 1981 claims."). "A [Section] 1981 action, then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in [Section] 1981(b)." Spriggs, 165 F.3d at 1018.

The First Amendment Motion "propose[s Ms. Lewis] as an additional defendant due to her culpability in failing to address the harassment and retaliation [Plaintiff] was experiencing at [Defendant] Duke University with the issuance of a remedial action letter that [she] was entitled to, per [Defendant] Duke University['s] policy." (Docket Entry 9 at 2; see also Docket Entry 28 at 5 ("In regards to Ms. Lewis'[s] individual liability, [Plaintiff] submit[ted] to this Court [an e]xhibit [], which contains an admission from Ms. Lewis that she did not issue a remedial action report, which [Plaintiff] was entitled to under [Defendant] Duke [University's] policy." (referring to Docket Entry 28-1)).) That proposed Section 1981 claim cannot proceed.

"[I]n an action brought pursuant to [Section] 1981, a plaintiff must show that race is a[] 'but-for' cause of the discriminatory action." Cunningham v. Wells Fargo N.A., No. 3:19CV528, 2020 WL 5300843, at *10 (W.D.N.C. Sept. 4, 2020) (unpublished). The allegations on which Plaintiff relies for her Section 1981 claim against Ms. Lewis "establish[] that [Plaintiff]

10

belongs to a racial minority group and that the alleged discrimination [by Ms. Lewis] involves contractual relationships under which [Plaintiff] has rights." Hewlett v. Permanent Gen. Assurance Corp., No. 3:15CV553, 2016 WL 3919460, at *3 (E.D. Va. July 20, 2016) (unpublished). "[Plaintiff has] fail[ed], however, to plead sufficient facts to show that [Ms. Lewis] intended to discriminate against [Plaintiff based on her race]." Id. Put another way, as to Ms. Lewis, "[Plaintiff has] plead[ed] allegations of race discrimination that 'are nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed.'" Id. (quoting Francis v. Giacomelli, 588 F.3d 186, 195-96 (4th Cir. 2009)). Such allegations "are not sufficient to surpass the speculative level or render plausible [Plaintiff's] right to relief against [Ms. Lewis under Section 1981]." Id.[6]

Plaintiff's allegations about Ms. Edwards-Davis similarly do not support a claim for racial discrimination under Section 1981. According to the First Amendment Motion, Ms. Edwards-Davis, who "handled [Plaintiff's] complaints of retaliation at [Defendant]

---

[6] Indeed, the Amended Complaint contains numerous allegations that negate any inference that racial animus against Plaintiff motivated Ms. Lewis's conduct in relation to Plaintiff, including allegations (A) that Ms. Lewis helped Plaintiff reclaim her personal computer from Defendant McDonnell (see Docket Entry 5 at 31), (B) that, during their interactions while Ms. Lewis investigated Plaintiff's reports of sexual harassment, "Ms. Lewis was very obliging" (id. at 32), and (C) that Ms. Lewis's investigation resulted in the issuance of a report "conclud[ing that] . . . sexual harassment . . . occurred in [PCB]" (id. at 36).

11

Duke University following Ms. Lewis'[s] promotion" (Docket Entry 9 at 2-3; accord Docket Entry 5 at 36, 39):

> is being proposed as a defendant, because, in addition to causing undue delay in the investigatory process for retaliation by not utilizing the evidence [Plaintiff] had already collected for Ms. Lewis and instead[] having [Plaintiff] recount everything [she] had previously discussed with Ms. Lewis while [Plaintiff] was undergoing an investigation [her]self, Ms. Edwards-Davis engaged in discriminatory conduct against [Plaintiff] by referring to [her] as Geeta during multiple meetings, [i.e., the first name of Defendant Swamy,] who is also Indian.

Docket Entry 9 at 3; see also Docket Entry 5 at 36 ("I had to re-explain [to Ms. Edwards-Davis] the whole process of what happened and forward evidence I had already sent to Ms. Lewis multiple times. I believe this practice was done to slow down the process and delay me from working towards my grant proposal . . . ."), 39 ("[Ms. Edwards-Davis] referred to me as Geeta in many of [our] meetings. [Defendant] Swamy, whose first name is Geeta, and I are both Indian, but[,] given the nature of the concerns I was having, I found this behavior to be discriminatory . . . .").)

Even "consider[ing] th[ose] factual allegations . . . as true and draw[ing] all reasonable inferences in favor of [P]laintiff," Bing, 959 F.3d at 616, she (at most) has "plead[ed] facts that are merely consistent with [Ms. Edwards-Davis's] liability [under Section 1981], [and thus has] stop[ped] short of the line between possibility and plausibility of entitlement to relief," Iqbal, 556

12

U.S. at 678 (internal quotation marks omitted).[7]  Because the proposed Section 1981 claim against Ms. Edwards-Davis (like the one proposed against Ms. Lewis) fails as a matter of law, the Court will deny Plaintiff leave to add Ms. Lewis and Ms. Edwards-Davis as defendants in this case.  See Kellogg Brown, 525 F.3d at 376.

In opposing the Amendment Motions, Defendants further contended that (A) the "Amended Complaint and proposed amendments do not contain sufficient factual allegations against [I]ndividual Defendants to support a claim for racial discrimination under Section 1981" (Docket Entry 19 at 11-12; see also id. at 13 ("Plaintiff provides no factual allegations to support an inference that she was treated differently based on her race by [I]ndividual[ Defendants].")), and (B) "Plaintiff fail[ed] to offer sufficient allegations to assert a Section 1981 claim against [Defendant] Duke [University]" (id. at 14; see also id. ("As stated

---

7 In that regard, the First Amendment Motion identifies no allegations that could support a reasonable inference that (A) Ms. Edwards-Davis's references to Plaintiff as "Geeta" reflected intent to discriminate based on race, rather than innocent mistakes, or (B) Ms. Edwards-Davis's insistence on obtaining information from Plaintiff directly (in lieu of relying on Ms. Lewis's prior investigation) constituted a racially motivated plot to impede Plaintiff's efforts to expose retaliation for reporting sexual harassment, instead of mere bureaucratic rigidity.  (See Docket Entry 9 at 2-3; see also Docket Entry 28 at 5 (arguing, as to Ms. Edwards-Davis, only that her "individual actions contributing to racial discrimination are detailed in the Complaint (Doc. No. 1)," without pointing to any particular allegations).)  Accordingly, "[P]laintiff[ ] ha[s] not nudged [her proposed Section 1981] claim[ against Ms. Edwards-Davis] across the line from conceivable to plausible," Twombly, 550 U.S. at 570.

13

above, Plaintiff has not sufficiently alleged any facts to show racial discrimination.")). Plaintiff did not directly address those contentions in her reply. (See Docket Entry 28 at 1-6.) The Court's review of the Amended Complaint (and the two related, proposed amended pleadings[8]) confirmed that Plaintiff has tendered no factual allegations remotely indicative of racial discrimination by Defendants Swamy or Duckett; however, the Amended Complaint makes these race-related, factual allegations pertaining to Defendants Duke University, McDonnell, Klotman, and Dowell-Newton:

---

8 The Amended Complaint spans 51 pages, consisting of a six-page standard form (see Docket Entry 5 at 1-2, 4-5, 49, 51), interspersed with (A) a page listing Defendants and the late-Dr. Abou-Donia (see id. at 3), (B) 43 (single-spaced) pages detailing Plaintiff's factual allegations and claims (see id. at 6-48), and (C) a page requesting relief (see id. at 50). Plaintiff submitted with the First Amendment Motion a proposed amended pleading that features (A) five pages of the same standard form (see Docket Entry 9-1 at 1-2, 5, 50, 52), (B) a two-page list of defendants, which adds Ms. Lewis and Ms. Edwards-Davis (see id. at 3-4), (C) 44 (single-spaced) pages (including one duplicate page) detailing Plaintiff's factual allegations and claims (see id. at 6-49; see also id. at 35-36 (duplicating same page twice)), and (D) a page requesting relief (see id. at 51). The First Amendment Motion states that its companion, proposed pleading alters the Amended Complaint in unspecified ways "to ensure accuracy and readability" (Docket Entry 9 at 4) and promises that "sections that have been edited will be highlighted" (id.), but no such highlighting appears in that proposed pleading (see Docket Entry 9-1 at 1-52). In any event, the factual allegations in the Amended Complaint and that proposed pleading do not appear to materially differ. (Compare Docket Entry 5 at 6-48, with Docket Entry 9-1 at 6-49.) Plaintiff also filed another proposed pleading with the Second Amendment Motion (see Docket Entry 10-1), as well as some exhibits pertaining to the (now-moot) arbitration issue (see Docket Entry 10-2). That second proposed pleading lacks factual allegations and a relief request. (See Docket Entry 10-1 at 1-8.)

1) "[o]n May 1, 2018, [Plaintiff] received a letter of congratulations from DoD[, i.e., the Department of Defense,] saying that a proposal [she] had submitted in 2017 was recommended for funding" (Docket Entry 5 at 10);

2) "[o]n May 29, 2018, Dr. Abou-Donia took [Plaintiff] to [Defendant] McDonnell . . . to recommend [Plaintiff] for a position change from research scientist to research assistant professor" (id.; see also id. (alleging that Plaintiff's "base salary was $47,000, which is the lowest in [PCB]"));

3) "[Defendant] McDonnell told [Plaintiff] that, if DoD agree[d] to provide [Plaintiff] with a 100% salary, [they could] talk about [a] position change" (id.), but "that, ultimately, the decision to change [Plaintiff's] position rested with the Dean, [Defendant] Klotman" (id.);

4) "[h]owever, in [Defendant McDonnell's] lab, at that time, all of the scientists (who were lighter-skinned than [Plaintiff]) who got a grant were immediately promoted to research faculty positions" (id. (emphasis added); see also id. (alleging Defendant McDonnell "ha[d] 5 research assistant professors in his lab")); and

5) "PCB administration, among whom [Defendant] Dowell-Newton was in charge, failed to keep appropriate records of [Plaintiff's] submitted grant, although they did this for others in PCB who received grants, all of whom were lighter skinned than [Plaintiff]" (id. at 11 (emphasis added); see also id. ("[Defendants] Klotman

15

and Duke University failed to ensure that PCB administration maintained appropriate records for all researchers, creating a work environment that facilitated the creation of disparities.")).

Those factual allegations, taken "as true [with] all reasonable inferences in favor of [ P]laintiff," Bing, 959 F.3d at 616, would permit a reasonable fact-finder to infer that she suffered "purposeful, racially discriminatory actions that affect[ed] at least one of the contractual aspects listed in [Section] 1981(b)," Spriggs, 165 F.3d at 1018, including the "performance[ and] modification . . . of [her employment] contract[ with Defendant Duke University], and the enjoyment of all benefits, privileges, terms, and conditions of th[at] contractual relationship," 42 U.S.C. § 1981(b). As a result, the Court will deem the Amended Complaint amended to assert race discrimination claims under Section 1981 (A) against Defendants Duke University, McDonnell, and Klotman, for failing to promote Plaintiff to research assistant professor after she obtained the DoD grant, and (B) against Defendants Duke University, Klotman, and Dowell-Newton, for failing to keep proper records for Plaintiff's DoD grant.

The foregoing analysis leaves only Plaintiff's request "to add an additional claim of breach of implied covenant of good faith and fair dealing, which arises from the same set of facts as the claims

16

raised [in the Amended Complaint]." (Docket Entry 9 at 3.)[9] Per the First Amendment Motion, the facts alleged in the Amended Complaint support this proposed claim because they establish that:

> [D]efendants . . . failed to timely, transparently, and adequately address concerns over the integrity of their investigatory practices, particularly in regards to the chain of events implicating [Defendant] Duke University's own lack of security that was never investigated at the time, and that [Plaintiff] was later held responsible for, despite providing evidence of the lack of systems in place to ensure data security and the subsequent loss of data, the intentions of Dr[]. Abou-[D]onia and [Defendant] McDonnell to engage in bad faith actions against [Plaintiff] to affect [her] career, and the support of [Defendants] Duke University, [] Klotman, Swamy, Duckett, and [] Dowell-Newton, [as well as Ms.] Lewis[] and [Ms.] Edwards-Davis[,] in enabling these actions by [Defendant] McDonnell and [Dr.] Abou-[D]onia, while[,] in so doing, violating [Defendant] Duke University's own policies in regards to scientific misconduct investigations and acting in good faith.

(Id. at 3-4; see also id. at 4 ("The evidence associated with this claim will contribute to a comprehensive understanding of how institutional processes were wrongfully weaponized against [Plaintiff].").)

In opposition to this proposed amendment, Defendants countered that, although "North Carolina does recognize a claim for a breach of the implied covenant of good faith and fair dealing, it must arise from an alleged contractual arrangement and Plaintiff

---

[9] The First Amendment Motion also seeks leave "to add . . . two items of relief requested" (Docket Entry 9 at 2), but fails to elaborate on or develop any support for that proposed addition (see id. at 2-5), in contravention of the requirement that motions to amend "must state good cause," M.D.N.C. LR 7.3(j). The Court therefore will not consider that matter.

17

fail[ed] to identify an underlying contract that would serve as the basis for this claim."  (Docket Entry 19 at 9-10; see also id. at 10 ("Plaintiff has not alleged the existence of a valid contract which any . . . Defendants breached. . . .  [Defendant] Duke [University's] research misconduct policy is not a contract with Plaintiff.").)  Plaintiff's reply, in turn, insisted that "[she] did have a contract with [Defendant] Duke University concerning their [sic] research misconduct policy . . . ."  (Docket Entry 28 at 5-6 (citing Docket Entry 28-2); see also Docket Entry 28-2 at 1-4 (incorporating e-mails showing that Plaintiff executed a "Science Culture and Accountability Plan" with Defendant Duke University, which imposed "personal and institutional obligat[ions]" and which Defendant McDonnell thereafter invoked on behalf of Defendant Duke University to mandate certain acts by Plaintiff).)

    Under these circumstances, the Court concludes that, as to the proposed claim for breach of an implied covenant of good faith and fair dealing against Defendant Duke University[10] in connection with the research misconduct investigation against Plaintiff, the Amended Complaint "plead[s] enough factual allegations to state a claim to relief that is plausible on its face," Bing, 959 F.3d at

---

10 Plaintiff's reply refers only to her "contract with [Defendant] Duke University" (Docket Entry 28 at 5), without contending that she entered into a contract with Individual Defendants (or Ms. Lewis and Ms. Edwards-Davis) which could support Plaintiff's assertion of a claim for breach of implied covenant of good faith and fair dealing against them.  (See id. at 5-6.)

18

616 (internal quotation marks omitted). The Court thus will deem the Amended Complaint further amended to include that claim.

CONCLUSION

Duke University should take the place of Duke University School of Medicine as a defendant in this case and the factual allegations in the Amended Complaint suffice at this stage to permit Plaintiff to pursue certain additional claims against certain defendants; however, other claims she has proposed (including all such claims against Ms. Lewis and Ms. Edwards-Davis) would fail as a matter of law. It also appears that Plaintiff cannot proceed against Dr. Abou-Donia and cannot maintain Title VII and/or ADEA claims against Individual Defendants.

**IT IS THEREFORE ORDERED** that the Amendment Motions (Docket Entries 9, 10) are **GRANTED IN PART AND DENIED IN PART**, in that (A) "Duke University" is substituted for "Duke University School of Medicine" as a defendant in this case, and (B) the Amended Complaint (Docket Entry 5) is deemed amended to assert (i) a race discrimination claim under Section 1981 against Defendants Duke University, McDonnell, and Klotman, for failing to promote Plaintiff to research assistant professor after she obtained the DoD grant, (ii) a race discrimination claim under Section 1981 against Defendants Duke University, Klotman, and Dowell-Newton, for failing to keep proper records for Plaintiff's DoD grant, and (iii) a state-law claim for breach of the implied covenant of good

19

faith and fair dealing against Defendant Duke University in connection with the research misconduct investigation against Plaintiff, but (C) leave to amend is otherwise denied.

**IT IS FURTHER ORDERED** that, on or before October 15, 2024, Plaintiff shall show cause, in writing, why the Court should not dismiss this action as against the late Dr. Abou-Donia under Rule 4(m). Failure by Plaintiff to comply with this Order shall result in the dismissal without prejudice of the late Dr. Abou-Donia.

**IT IS FURTHER ORDERED** that, on or before October 15, 2024, Plaintiff shall show cause, in writing, why the Court should not dismiss any Title VII and ADEA claims against Defendants McDonnell, Klotman, Swamy, Duckett, and Dowell-Newton, in light of Plaintiff's concession that such claims only lie against her employer (not other, even supervisory, employees). Failure by Plaintiff to comply with this Order shall result in the dismissal without prejudice of any Title VII and ADEA claims against Defendants McDonnell, Klotman, Swamy, Duckett, and Dowell-Newton.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 23, 2024