IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRAHMAJOTHI VASUDEVAN MULUGU, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     1:23-CV-957<br>) |
| DUKE UNIVERSITY, et al., | )<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The plaintiff, Brahmajothi Mulugu, was a researcher employed for a time by the defendant, Duke University. When Duke ended this relationship, Dr. Mulugu sued Duke and a number of individuals associated with Duke. Dispositive motions are pending and the case is set for trial during the June 2026 civil term of court. Dr. Mulugu's Title VII claim against Duke for discrimination by retaliation will proceed to trial, but all other claims and defendants will be dismissed.

I. **Procedural History**

As is relevant here, the defendants filed a motion for judgment on the pleadings, Doc. 66, and a motion for summary judgment. Doc. 72. The Magistrate Judge recommended dismissing all claims except Dr. Mulugu's claims against Duke for Title VII discrimination by retaliation and breach of the implied covenant of good faith and

fair dealing. Doc. 99 at 1, 83–84. Duke has objected to the recommendation, contending that all of Dr. Mulugu's claims should be dismissed. Doc. 102.

The Magistrate Judge accurately set forth the complicated procedural history of this matter in more detail. *See* Doc. 99 at 2–7.

## II. Motion for Leave to Amend

The defendants filed their motion for summary judgment on June 30, 2025. Doc. 72. After receiving extensions of time, *see, e.g.*, Text Order 08/12/2025, Dr. Mulugu responded to the motion for summary judgment with a brief and evidence on August 18, 2025. Docs. 78, 79. Some two weeks later, she filed a motion for leave to amend her memorandum, filing an "amended response" and several dozen more exhibits constituting hundreds of pages. Doc. 81 (motion); Doc. 82 (brief in support); Docs. 83 through 88 (proposed amended response and exhibits).

After extensive review of the procedural history and analysis of the facts under the applicable law, the Magistrate Judge recommended denial of Dr. Mulugu's motion to amend her response and submit additional exhibits. Doc. 99 at 53–65. No party objected to this aspect of the recommendation. For the reasons stated by the Magistrate Judge, the motion for leave to amend will be denied. The Court agrees that Dr. Mulugu has not shown excusable neglect.

## III. Retaliation Claims

### A. Title VII

Title VII prohibits an employer from taking an adverse employment action against an employee who engages in activity protected by that statute. *See Laurent-Workman v.*

*Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022). "Plaintiffs may prove these violations either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (cleaned up). "To prevail under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case by showing: (i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse activity." *Id.* at 250 (cleaned up). "The burden then shifts to the University to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id*. "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that its purported nonretaliatory reasons were not its true reasons, but were a pretext for retaliation." *Id*. (cleaned up).

The Magistrate Judge engaged in an extensive discussion of the evidence and concluded that material facts are in dispute. Doc. 99 at 67–83. Duke objects to this aspect of the recommendation, contending that there is no evidence that Duke initiated the allegedly retaliatory misconduct investigation into Dr. Mulugu's failure to maintain appropriate records of her research data because of the report of sexual harassment. Doc. 102 at 11–20.

The Court appreciates the evidence cited by Duke, and perhaps Duke will prevail at trial. The evidence is undisputed that concerns developed in the fall of 2019, Docs. 73-7, 73-10, about whether Dr. Mulugu and her supervisor, Dr. Abou-Donai, were following

3

Duke's policies governing how research data was maintained and reviewed and that those concerns intensified in late February 2020, Docs. 73-12 through 73-13, a couple of days before Dr. Mulugu reported sexual harassment by Dr. Abou-Donai. Doc. 73-15. But as the Magistrate Judge explained, temporal proximity combined with Dr. Mulugu's testimony allows other inferences, *see, e.g.*, Doc. 99 at 74–77 & nn. 22–23; *id.* at 80–81, and a reasonable jury could conclude that the timing of the research misconduct investigation and the way it was handled could give rise to an inference of causation. The objection is overruled, and as to this claim against Duke, the motion for summary judgment will be denied.

### B. Age Discrimination in Employment Act ("ADEA")

Dr. Mulugu asserted a claim under the ADEA for age discrimination in the complaint. *See id.* at 3, 14. As noted *infra*, the Magistrate Judge recommended granting Duke's motion for judgment on the pleadings as to Dr. Mulugu's ADEA claim. Neither the objections nor Dr. Mulugu's response to the objections, Docs. 102, 105, mention an ADEA retaliation claim, and the Magistrate Judge's discussion of the retaliation claim mentions only protected conduct directed to sexual harassment, a Title VII claim. To the extent Dr. Mulugu asserted an ADEA claim based on retaliation, it will be dismissed.

### IV. State Law Claim for Breach of Duty of Good Faith

Dr. Mulugu asserts a state law claim for breach of the implied covenant of good faith and fair dealing against Duke, arising, she contends, during a research misconduct investigation that Duke conducted against her. Doc. 46 at 19–20; Doc. 99 at 46. Because

4

Dr. Mulugu has not produced evidence of a contract to which this covenant applies, the motion for summary judgment will be granted.

Under North Carolina law, "[p]arties to an executory contract for the performance of some act or services in the future impliedly promise not to do anything to the prejudice of the other inconsistent with their contractual relations." *Tillis v. Calvine Cotton Mills, Inc.*, 251 N.C. 359, 363, 111 S.E.2d 606, 610 (1959). A party breaches this implied duty of good faith when that party takes action injuring the right of the other party to receive the benefit of their agreement and thus deprives the injured party of the fruits of her bargain. *See Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228–29, 333 S.E.2d 299, 305 (1985); *Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n*, 255 N.C. App. 236, 253, 805 S.E.2d 147, 158 (2017).

As is obvious, this cause of action requires that there be a contract between the parties. In other words, the existence of a valid contract is an essential element of a claim for breach of the implied covenant of good faith and fair dealing. *McDonald v. Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n*, 259 N.C. App. 582, 586–587, 816 S.E.2d 861, 864–65 (2018); *see* Doc. 105 at 3 (Dr. Mulugu's briefing acknowledging that "the implied covenant of good faith and fair dealing arises only where a contract exists.").

The only asserted contract is a document entitled "Science Culture and Accountability Plan," which the parties call the "SCAP." Doc. 46 at 18; Doc. 67-3 (SCAP). On its face, the SCAP appears to be a Duke policy applicable across the Department of Pharmacology and Cancer Biology in the School of Medicine, not an agreement between Duke and Dr. Mulugu. Doc. 67-3. The Plan does not mention Dr.

Mulugu by name, instead referencing, for example, "each member in the department," "every person in the department," and "each lab member." *Id*. at 2–3. Nowhere in the SCAP does Duke make any promises to Dr. Mulugu, nor does she make any promises to Duke. *Id*. There are no promises made in the emails submitted by Dr. Mulugu, which show only that she signed the Plan. Doc. 28-2. Dr. Mulugu has pointed to no testimony tending to show that the SCAP is a contract, and there is no evidence of any consideration provided by Duke in exchange for Dr. Mulugu's signature on the SCAP.

Similarly, "a university's policy cannot be the basis of a breach of contract claim unless the policy provision is a specific, enforceable promise incorporated into the terms of a contract between the university and its employee." *See Shaughnessy v. Duke Univ.*, No. 18-CV-461, 2020 WL 4227545, at *5 (M.D.N.C. July 23, 2020) (cleaned up); *Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83–84 (1985). Here, the evidence is undisputed that Dr. Mulugu was employed at will, Doc. 73-3 at 2, and there is no evidence that Duke specifically incorporated the SCAP into her employment at will, that Duke made promises to Dr. Mulugu related to the SCAP, or that Duke agreed to expand her employment terms to include the SCAP.

Dr. Mulugu contends that the emails she tendered support an inference that Duke required her, as a condition of continued employment, to execute the SCAP and that the SCAP included obligations on both her and Duke. Doc. 105 at 4. Perhaps that was enough at the pleading stage, *see* Doc. 99 at 49, as a plaintiff does not have to prove her case in the complaint, and her claim need only be plausible at that point. *See, e.g.*, *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of*

6

*Durham*, No. 20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021). But nowhere in the emails does any agent of Duke say or imply that signing the SCAP is a condition of her continued employment, nor has she pointed to any such testimony by herself[1] or anyone else.[2]

At summary judgment, the evidence must create a genuine dispute of material fact and be sufficient to allow a reasonable jury to rule in favor of the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence will not do; "if the evidence is merely colorable or not significantly probative, a motion for summary judgment may be granted." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995) (cleaned up). Dr. Mulugu has not presented sufficient evidence here, and this claim will be dismissed.

This does not mean the SCAP will be irrelevant at trial. It may well be relevant to the Title VII retaliation claim.

## V. Other Claims

The Magistrate Judge recommended dismissing all other claims against all other defendants. No party has objected to those recommendations. The Court has reviewed the remaining aspects of the recommendation and adopts them in full. In sum:

---

[1] In her deposition, Dr. Mulugu did not testify that signing the SCAP was required, that the SCAP was an offer, or that she accepted it; she identified no consideration. Doc. 73-2 at 69–70.

[2] The Court need not delve into the cases on whether a promise of continued employment is sufficient consideration, since there is no evidence of any such promise.

1) The plaintiff's § 1981 claims against Duke and the remaining individual defendants are barred by the statute of limitations, Doc. 99 at 8–14;

2) The plaintiff's Title VII and ADEA claims against Duke for failure to promote fail for the same reasons, *id*. at 14–16;

3) The plaintiff's Title VII and ADEA claims based on unequal terms and conditions of employment should be dismissed in part on statute of limitations grounds and otherwise for failure to state a claim, *id*. at 17–40;

4) The plaintiff's Title VII and ADEA claims based on the termination of her employment should be dismissed for failure to state a claim, *id*. at 41–43; and

5) The plaintiff's claim for discrimination based on fraud should be dismissed for failure to state a claim. *Id*. at 43–46.

### VI. Trial Preparation

The case is set for trial during the June 2026 civil term. The only claim that remains for trial is Dr. Mulugu's Title VII retaliation claim that Duke retaliated against her for reporting sexual harassment by the way it initiated and conducted the research misconduct investigation.

To insure that the parties are ready for trial, that each knows in advance the exhibits, witnesses, and deposition testimony that the other will use, and to assist the Court, and in view of the difficulties Dr. Mulugu has had in meeting court deadlines, the Court will set a specific schedule setting deadlines for trial preparation filings required by the Rules of Civil Procedure and the Local Rules for trial preparation, modified and expanded for the needs of this case. These deadlines are generous, especially since the

parties already began the process when the case was set for an earlier trial, and motions to extend the time will not be viewed with leniency. Failure to comply with these deadlines by either party is highly likely to result in exclusion of evidence. For convenience, a chart with these dates is attached.

It is **ORDERED** that:

1. The plaintiff's motion for leave to amend her brief in opposition to summary judgment, Doc. 81, is **DENIED**.

2. The defendants' motion for summary judgment, Doc. 72, is **DENIED** as to the plaintiff's Title VII retaliation claim against Duke that Duke retaliated against her for reporting sexual harassment by the way it conducted the research misconduct investigation.

3. The defendants' motion for summary judgment, Doc. 72, is **GRANTED** as to the plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

4. The defendants' motion for judgment on the pleadings, Doc. 66, is **GRANTED** as to all other claims and defendants.

5. At an appropriate time, the Court will set the trial for a date certain during the June 2026 term, taking into account the needs of this and other cases set for trial during that term. To the extent possible, the Court will accommodate conflicts of the parties, counsel, and the witnesses, but that is not always feasible. The parties are directed not to schedule anything in June that will interfere with this trial.

9

6. No later than **March 23, 2026**, each side **SHALL** file a trial preparation report no longer than 500 words setting forth any conflicts (including witness conflicts) now existing during June, identifying the specific dates of the conflict, who has the conflict, and the nature of the conflict.

7. It is the Court's preliminary view, based on its examination and study of the evidence and in light of the dismissal of all but one of the plaintiff's claims, that three days should be well sufficient for opening statements, evidence, and closing arguments. The parties should plan accordingly and be organized. At the pretrial conference, the Court will set the hours available to each side and make any needed minor adjustments.

8. Before the summary judgment motion was resolved and when the case was optimistically set for trial during the March civil term, the parties filed final pre-trial disclosures of witness and exhibit lists and deposition designations as required by Fed. R. Civ. P. 26(a)(3) and by LR 40.1(c). Doc. 101 (plaintiff's disclosures); Doc. 103 (defendants' disclosures). Now that the claims for trial have been reduced to the Title VII retaliation claim, the parties may be able to reduce the exhibits they plan to use at trial and may be able to remove witnesses.

9. Each party **SHALL** file its amended witness and exhibit lists no later than **April 3, 2026**. No party may add a witness or exhibit not listed in its original disclosures. The exhibit list **SHALL** list each exhibit separately, numbered with the exhibit number that the party will use for that exhibit at trial, and

10

providing a clear description of the exhibit. Objections and motions in limine **SHALL** be filed no later than **April 17, 2026**. Responses to motions in limine **SHALL** be filed no later than **April 30, 2026**.

10. Amended page-and-line designations of deposition testimony to be offered at trial **SHALL** be filed, no later than **May 8, 2026**, in chart form similar to that in the defendants' charts at Doc. 103 at 7–14. No party may add deposition testimony that was not included in its original disclosures. Blanket designations of entire depositions will be stricken. Objections and counter-designations by page-and-line **SHALL** be filed no later than **May 15, 2026**, using the same chart. Objections to counter-designations **SHALL** be filed, using the same chart, no later than **May 20, 2026**.

11. Trial briefs required by LR 40.1(a) **SHALL** be filed no later than **May 15, 2026**.

12. No later than **May 15, 2026**, each party **SHALL** provide to the case manager two hard copies of their exhibits and **SHALL** provide an identical set to the other party. These exhibits **SHALL NO**T be filed on the docket. The exhibits **SHALL** be marked with an exhibit sticker reflecting the exhibit number, consistent with the exhibit lists filed in April. The exhibits **SHALL** be provided in three ring binders with numbered tabs dividing the exhibits, again using the exhibit numbers from the April exhibit lists. Each party **SHALL** maintain the set of exhibits they may offer into evidence at trial.

11

13. The parties **SHALL** exchange proposed jury instructions no later than **April 30, 2026**, and **SHALL** thereafter meet and confer in an effort to narrow and focus any disputes. No later than **May 15, 2026,** the parties **SHALL** file a Joint Submission containing any agreed upon instructions. To the extent there is disagreement, each party **SHALL** file their own requested instructions, again by **May 15, 2026**.

14. The Court will hold a pretrial conference on Thursday, **May 21, 2026**, at 9:30 a.m.

15. If any party is considering a motion to seal exhibits or seal trial testimony or to close the courtroom, attention is directed to LR 40.1(d).

16. If any party believes a judicial settlement conference with a Magistrate Judge would be helpful, they may ask for it. Otherwise, the Court does not plan to hold a judicial settlement conference.

17. Any attorney who plans to speak during the trial **SHALL** attend any pretrial conferences.

18. No later than **May 1, 2026**, the parties **SHALL** each advise the case manager about the method they will use for digital and audio presentation of evidence. If the court evidence presentation system will be used, the party shall immediately arrange for the required training, and, if a party will use another system, the party shall immediately arrange a date and time for a test run. If a party intends to use only paper copies of exhibits, the party **SHALL** so advise the case manager by **May 1, 2026**.

19. Except as explicitly modified herein or by other Court order or notice, the provisions of otherwise applicable Local Rules and Rules of Civil Procedure apply.

This the 4th day of March, 2026.

_____
UNITED STATES DISTRICT JUDGE

13

Case 1:23-cv-00957-CCE-LPA   Document 107   Filed 03/04/26   Page 13 of 14

| DEADLINE | EVENT |
| --- | --- |
| March 23, 2026 | File trial preparation report |
| April 3, 2026 | File amended witness and exhibit lists |
| April 17, 2026 | File objections and motions in limine |
| April 30, 2026 | File responses to motions in limine |
| | Exchange proposed jury instructions |
| May 1, 2026 | Advise the case manager about method of evidence presentation |
| May 8, 2026 | File amended page-and-line designations of deposition testimony |
| May 15, 2026 | File objections and counter-designations by page-and-line |
| | File trial briefs |
| | File joint submission containing agreed upon jury instructions and individually file requested instructions where there is disagreement |
| | Provide the case manager two hard copies of exhibits and provide a set to the other party |
| May 20, 2026 | File objections to counter-designations |
| May 21, 2026 | Pretrial conference at 9:30am |
| June 2026 | Trial |